IN THE UNITED STATES DISTRICT COURT
WESTERN DISTRICT OF ARKANSAS
FAYETTEVILLE DIVISION

MONICA SANGWIN                                                                                          PLAINTIFF

VS.                                            CIVIL NO. 04-5309

JO ANNE B. BARNHART, COMMISSIONER
SOCIAL SECURITY ADMINISTRATION                                                          DEFENDANT

**MAGISTRATE JUDGE'S REPORT AND RECOMMENDATION**

Plaintiff, Monica Sangwin, brings this action pursuant to 42 U.S.C. § 405(g), seeking judicial review of a decision of the Commissioner of the Social Security Administration (hereinafter "Commissioner") denying her claim for disability insurance benefits (hereinafter "DIB") under the provisions of Title II of the Social Security Act (hereinafter the "Act").

**Procedural Background:**

The application for DIB now before this court was filed on July 8, 2002, alleging an onset date of July 18, 2001, due to obesity, anxiety, depression, degenerative disc disease ("DDD"), and fibromyalgia. (Tr. 20). An administrative hearing was held on January 16, 2004. (Tr. 446-504). Plaintiff was present and represented by counsel.

On April 8, 2004, the Administrative Law Judge (hereinafter "ALJ"), issued a written decision finding that plaintiff suffered from severe impairments, but that those impairments did not meet or equal the criteria of any of the impairments listed in Appendix 1, Subpart P, Regulations No. 4. (Tr. 24). After discrediting plaintiff's subjective allegations, the ALJ concluded that she maintained the residual functional capacity ("RFC"), to perform sedentary work that allowed her to sit and stand at will, and did not require more than occasional fingering with both hands. From a mental standpoint, the ALJ determined that plaintiff could perform only task-oriented work that involved incidental contact with the general public. (Tr. 23-24). He then found that plaintiff's RFC did not preclude

her from performing her past relevant work ("PRW"), as a computer analyst/data specialist. (Tr. 25).

On October 15, 2004, the Appeals Council declined to review this decision. (Tr. 4-7). Subsequently, plaintiff filed this action. (Doc. # 1). This case is before the undersigned for report and recommendation. Both parties have filed appeal briefs, and the case is now ready for decision. (Doc. # 10, 11).

**Applicable Law**:

This court's role is to determine whether the Commissioner's findings are supported by substantial evidence on the record as a whole. *Ramirez v. Barnhart*, 292 F.3d 576, 583 (8th Cir. 2002). Substantial evidence is less than a preponderance but it is enough that a reasonable mind would find it adequate to support the Commissioner's decision. The ALJ's decision must be affirmed if the record contains substantial evidence to support it. *Edwards v. Barnhart*, 314 F.3d 964, 966 (8th Cir. 2003). As long as there is substantial evidence in the record that supports the Commissioner's decision, the court may not reverse it simply because substantial evidence exists in the record that would have supported a contrary outcome, or because the court would have decided the case differently. *Haley v. Massanari*, 258 F.3d 742, 747 (8th Cir. 2001). In other words, if after reviewing the record it is possible to draw two inconsistent positions from the evidence and one of those positions represents the findings of the ALJ, the decision of the ALJ must be affirmed. *Young v. Apfel*, 221 F.3d 1065, 1068 (8th Cir. 2000).

It is well-established that a claimant for Social Security disability benefits has the burden of proving her disability by establishing a physical or mental disability that has lasted at least one year and that prevents her from engaging in any substantial gainful activity. *Pearsall v. Massanari*, 274 F.3d 1211, 1217 (8th Cir.2001); *see also* 42 U.S.C. § § 423(d)(1)(A), 1382c(a)(3)(A). The Act defines

"physical or mental impairment" as "an impairment that results from anatomical, physiological, or psychological abnormalities which are demonstrable by medically acceptable clinical and laboratory diagnostic techniques." 42 U.S.C. § § 423(d)(3), 1382(3)(c). A plaintiff must show that her disability, not simply her impairment, has lasted for at least twelve consecutive months.

The Commissioner's regulations require her to apply a five-step sequential evaluation process to each claim for disability benefits: (1) whether the claimant has engaged in substantial gainful activity since filing her claim; (2) whether the claimant has a severe physical and/or mental impairment or combination of impairments; (3) whether the impairment(s) meet or equal an impairment in the listings; (4) whether the impairment(s) prevent the claimant from doing past relevant work; and, (5) whether the claimant is able to perform other work in the national economy given her age, education, and experience. *See* 20 C.F.R. §§ 404.1520(a)- (f)(2003), 416.920. Only if the final stage is reached does the fact finder consider the plaintiff's age, education, and work experience in light of his or her residual functional capacity. *See McCoy v. Schwieker*, 683 F.2d 1138, 1141-42 (8th Cir. 1982); 20 C .F.R. §§ 404.1520, 416.920 (2003).

**Discussion:**

When, as here, the Appeals Council has considered new and material evidence and has, nonetheless, declined review, the ALJ's decision becomes the final action of the Commissioner. At this point, our task is only to decide whether the ALJ's decision is supported by substantial evidence in the record as a whole, including the new evidence deemed material by the Appeals Council that was not before the ALJ. As the United States Court of Appeals for the Eighth Circuit has noted, "this [is] a peculiar task for a reviewing court." *Riley v. Shalala*, 18 F.3d 619, 622 (8th Cir. 1994). However, once it is clear that the Appeals Council considered the new evidence, then we must factor in the evidence and determine whether the ALJ's decision is still supported by substantial evidence. This

requires us to speculate on how the ALJ would have weighed the newly submitted evidence had they been available at the initial hearing. *Flynn v. Chater*, 107 F.3d 617, 622 (8th Cir. 1997). Thus, we have endeavored to perform this function with respect to the newly submitted evidence. *Id.*; *Mackey v. Shalala*, 47 F.3d 951, 953 (8th Cir. 1995).

Among the additional medical records submitted to the Appeals Council are RFC assessments completed by plaintiff's treating physicians. On June 9, 2004, Dr. Donnie Holden completed a psychiatric/psychological impairment questionnaire. (Tr. 418). He indicated that he had begun treating plaintiff in October 1997, most recently seeing her on May 26, 2004. Dr. Holden diagnosed plaintiff with bipolar disorder exacerbated by medical problems, dependent personality disorder, and obesity. He noted that her global assessment of functioning score ("GAF"), was a fifty-two, which was also the highest GAF she had obtained. Further, Dr. Holden indicated that it was unlikely that plaintiff would improve further. Clinically, he stated that plaintiff suffered from poor memory, appetite disturbance with weight change, mood disturbance, emotional lability, recurrent panic attacks, anhedonia or pervasive loss of interests, feelings of guilt/worthlessness, difficulty thinking or concentrating, suicidal ideation or attempts, social withdrawal or isolation, decreased energy, persistent irrational fears, and generalized persistent anxiety. (Tr. 419). However, Dr. Holden reported that plaintiff's depressive symptoms were more frequent and/or severe. (Tr. 420). He then indicated that plaintiff had moderate limitations in the areas of remembering locations and work-like procedures; understanding and remembering one or two-step instructions; understanding and remembering detailed instructions; carrying out detailed instructions; maintaining attention and concentration for extended periods; interacting appropriately with the general public; and, traveling to unfamiliar places or using public transportation. (Tr. 421-423). Dr. Holden also noted marked

limitations in the area of completing a normal workweek without interruptions from psychologically based symptoms. (Tr. 422). He stated that anxiety and agoraphobia would prevent plaintiff from being in social situations. (Tr. 423). Dr. Holden then listed plaintiff's medications as Klonopin wafers, Klonopin, Neurontin, Provigil, and Wellbutrin. (Tr. 423). He was of the opinion that plaintiff's condition would render her unable to tolerate stressful situations, even working in a "low stress" environment. (Tr. 424).

On August 2, 2004, Dr. James Arkins wrote a letter indicating that he had examined plaintiff on this date, and that he had been her personal physician for over twenty years. (Tr. 426). Dr. Arkins indicated that plaintiff carried a diagnosis of chronic myofascial syndrome of the neck and upper and lower back, as well as probable fibromyalgia. She was also suffering from generalized DDD of her cervical, thoracic, and lumbar spine; generalized non-specific arthralgias; generalized non-specific fatigue; generalized chronic pain syndrome; and, severe obesity that contributed to her musculoskeletal symptoms. He noted that she had valiantly tried to lose weight, both with diet and exercise, without success. Therefore, she was scheduled to have a gastric bypass procedure performed later that month. Dr. Arkins then voiced his opinion that plaintiff was disabled, and could not maintain gainful employment. (Tr. 426).

In support of his opinion, Dr. Arkins submitted a multiple impairment questionnaire. (Tr. 427). He indicated that plaintiff's prognosis was only fair. Further, he documented generalized muscle tenderness, generalized joint tenderness, limited mobility due to discomfort, and abnormal x-ray films, as objective evidence to support his diagnoses. (Tr. 428). Dr. Arkins noted that plaintiff's pain was constant, and exacerbated by activity and emotional stress. He rated her pain level as a nine on a scale of one to ten, and her fatigue as an eight. (Tr. 429). Further, Dr. Arkins

stated that plaintiff's pain could not be completely relieved without experiencing unacceptable medication side effects. He then reported that plaintiff could sit, stand and walk a maximum of one hour during an eight-hour workday, noting that it would be necessary or medically recommended that she not sit continuously in a work setting. (Tr. 429). Dr. Arkins was of the opinion that plaintiff would need to get up and move about every ten to fifteen minutes for approximately ten to fifteen minutes. (Tr. 429-430). He then indicated that plaintiff could lift and carry a maximum of ten pounds occasionally, but would experience significant limitations in doing repetitive reaching, handling, fingering, lifting; could not push, pull, kneel, bend, or stoop; and, should avoid temperature extremes, humidity, dust, fumes, noise, and gases. (Tr. 430, 433). Dr. Arkins reported that plaintiff was no longer able to type, that her hands often swelled, and that she was often unable to lift her arms above her shoulders. He also stated that plaintiff had marked limitations regarding grasping, turning, and twisting objects; using her fingers/hand for fine manipulation; and using her arms for reaching (including overhead). (Tr. 430-431). As for her medications, the doctor listed Provigil, Vioxx, Clonazepam, Synthroid, Neurontin, and Wellbutrin as current prescriptions. (Tr. 431).

Dr. Arkins opined that plaintiff's pain and fatigue were frequently severe enough to interfere with her attention and concentration. (Tr. 432). He also stated that emotional factors contributed to the severity of her symptoms and functional limitations. Specifically, he listed anxiety, depression, panic attacks, stressful situations/encounters, and post-traumatic stress syndrome as emotional factors that affected plaintiff. Due to this, Dr. Arkins stated that plaintiff was incapable of working, even at "low stress" position. (Tr. 432).

Because the record indicates that plaintiff has sought consistent treatment for various aches and pains, as well as formal mental health treatment, we believe that remand is necessary to allow

the ALJ to consider the RFC assessments of plaintiff's treating physicians. We note, that the opinion of a consulting physician who examined the plaintiff once or not at all does not generally constitute substantial evidence. *See Jenkins v. Apfel*, 196 F.3d 922, 925 (8th Cir. 1999).

On remand, the ALJ is also directed to reconsider the evidence concerning plaintiff's fibromyalgia diagnosis, and to perform a proper review of that evidence. Fibromyalgia involves pain in fibrous tissues, muscles, tendons, ligaments and other "white" connective tissues. Diagnosis is recognized by a typical pattern of diffuse fibromyalgia and nonrheumatic symptoms, such as poor sleep, trauma, anxiety, fatigue, irritable bowel symptoms, exposure to dampness and cold, and by exclusion of contributory or underlying diseases. See *The Merck Manual,* pp. 1369-1371 (16th Edition, 1992). Its cause or causes are unknown, there is no cure, and, perhaps of greatest importance to disability law, its symptoms are entirely subjective. There are no laboratory tests for the presence or severity of fibromyalgia. The principal symptoms are "pain all over," fatigue, disturbed sleep, stiffness, and—the only symptom that discriminates between it and other diseases of a rheumatic character— multiple tender spots, more precisely 18 fixed locations on the body (and the rule of thumb is that the patient must have at least 11 of them to be diagnosed as having fibromyalgia) that when pressed firmly cause the patient who really has fibromyalgia to flinch.

We recognize that it is difficult to determine the severity of plaintiff's condition because of the unavailability of objective clinical tests. Some people may have such a severe case of fibromyalgia as to be totally disabled from working, but others do not. Michael Doherty & Adrian Jones, *Fibromyalgia Syndrome (ABC of Rheumatology)*, 310 BRITISH MED. J. 386 (1995). The question for the ALJ is whether the plaintiff is one of the minority, or not.

**Conclusion:**

Based on the foregoing, we recommend reversing the decision of the ALJ and remanding this case to the Commissioner for further consideration pursuant to sentence four of 42 U.S.C. § 405(g). **The parties have ten days from receipt of our report and recommendation in which to file written objections pursuant to 28 U.S.C. § 636(b)(1). The failure to file timely objections may result in waiver of the right to appeal questions of fact. The parties are reminded that objections must be both timely and specific to trigger de novo review by the district court.**

DATED this 10th day of February 2006.

/s/ Beverly Stites Jones
HON. BEVERLY STITES JONES
UNITED STATES MAGISTRATE JUDGE